Good morning, judges. My name is attorney Lynn Hamilton. I'm from Besa, Arizona. And I represent appellant Castro-Ponce. I'm going to begin this matter by going straight to the topic that obviously concerns the court, and that is the enhancement of my client's sentence for obstruction of justice. The court directed us specifically to U.S. v. Jimenez-Ochoa. Obstruction must be both false, material, and willful. And under the doctrine of Jimenez-Ochoa, and also U.S. v. Gowden, it is essential that there be a finding of materiality of the false testimony. At page 6 of the sentencing transcript, Judge Bolton addressed this matter. The judge said for an adjustment for obstruction was warranted. She said, quote, the defendant clearly lied on the stand with respect to the activities he testified about and the offer of innocent and not credible explanation for these activities. You can see from the quotation that she did not address materiality. Well, she didn't. Is there any doubt about what the results could be if she does? Yes, I think there is. And why is that? Because when my client took the stand, he was on the stand for really quite a long time. And during that time period, the accused provided a very lengthy story of his personal life, his employment history, narratives of why he went here, there, everywhere, various listed people in his life, and what his relationships were to these people, until we know what the judge focused on, what she thought was material, what the key lie was in her mind, or maybe lies. We don't have the ability to have appropriate appellate review, nor do we have an ability to evaluate her decision. In my client's case, we think that the Jimenez-Ochoa case requires the judge to say more than what she said here. It's more as necessary than merely characterizing his testimony as incredible. You have to have the word material or a very close synonym. Counsel, Judge Gould, if I could ask you a question, please. Certainly. There definitely has to be materiality. So if she thought he was lying about where he went to school or his family life, that wouldn't support this. But her quoted statement, which you read, says that he lied about the activities that he testified about. And those activities, I thought, included his explanations for why he happened to be at the locations where the drugs turned up. If he gives innocent explanations for things that are inculpatory, why isn't that material implicitly? Maybe we should vacate and send it back with some rule about being more explicit. But I have trouble seeing why it's not implicitly material. I think because of, in one part, the very lengthy quality of his testimony and the many, many topics he covered. We can't tell what the judge is pointing to when we read her analysis. We can't tell if she's saying, well, I think he lied when he said he had a horse ranch in Mexico. We can't tell if she thinks he's lying when he said he participated in auto salvage business and that's why he was driving around in the Southwest. Or we can't tell if he's lying when he said his car overheated in the summer in the Mojave Desert and that's why he stopped to visit his friend at the Moreno address. We just can't tell. And in order for us to make a proper evaluation, I would say that it's essential that the judge find that a particular statement was material or a topic was material and that she identify that so that later on, if there is a desire to have appellate review, we can have it in a meaningful way.  And we can't tell if she's saying, well, I think he lied when he said he had a horse ranch in Mexico. Or maybe she thought he was lying when he said, when it said TJ11 on a Post-it note, that that wasn't a ledger. We just don't know. Obstruction should not, and additionally, I would also point out that obstruction should not just be a denial of misconduct by the accused. Otherwise, his right to testify would be chilled. There should be a finding if the testimony of the accused causes extra work for the government, sends them on a wild goose chase, for example, or if the client falsely blames another person for the misconduct and tries to get someone else in trouble. But that's not the law, is it? I mean, I thought your interview alone was sufficient. No, you're right. I'm just urging that we extend the law a little bit. You've used five and a half minutes to view ten. Are there other issues that you plan to discuss? Just briefly. Well, I don't, you know, if that's your only argument, I don't want to cut it short. No, that's not my only argument. You have time. If you have other arguments you want to present. Yes. In this matter, I raised the denial of the Rule 29, motion for a directed verdict of acquittal. And I realize that in most appellate cases, when you raise sufficiency of the evidence, it's kind of regarded as a throwaway issue, but not here. In this particular situation, law enforcement became suspicious of my client because he made a phone call to a man in Mexico whom law enforcement believed was involved in the drug trade. This man's name was Lalo. DEA then decided my client must be involved in the drug trade. They decided he was a drug dealer. And after that, literally everything that he did became drug-related somehow. Let me ask you something. Suppose we thought that on the telephone calls alone and the all trips and so on, there was sufficient evidence of the conspiracy, but there were also two specific incidents. As to which it seemed to me that the evidence was pretty flimsy. Thank you. And the question is, does the fact that he, if I then take it as a fact established beyond a reasonable doubt that he was involved in a conspiracy, an agreement to trade drugs, does that supply the additional evidence with regard to the individual incidents that pushes it over? In other words, is that relevant to the evaluation of what happened? It seems like it should be at each of these individual places, where they don't actually see him having any drugs. They go in the next day. They find drugs in the house. They find money in the house. On the other hand, if he was selling the drugs, you'd think he'd have the money, not leave it in the house, et cetera. But does the fact that if we assume it's a fact that he was involved in an agreement to trade drugs put enough coloration on the individual facts to supply the sufficiency? I would say no, because theoretically, you could have a person who engages in a drug conspiracy, and they could go to a birthday party, let's say, and law enforcement could be monitoring them very closely with airplanes and GPS trackers. And it could be just an innocent birthday party. I think that the key here is that the government has failed to supply a nexus between the items that they observed and found at the Fresno farm and at the Moreno address. They failed to connect up my client to those items. When you look at, for example, at the Fresno farm situation, there were five buildings at the Fresno farm. There was the ranch house, a dorm for workers, a storage shed, a barn, and another storage place. When DEA came in, they found that one of the workers named Cesar was, in fact, one who had a fourth of a pound of meth and some scales. And then they found an old truck out in the storage unit. But there were no fingerprints, no ownership of the truck, no keys, no title, nothing. I was joking with a friend when I reviewed my oral argument presentation. I said, well, it's a good thing that the pizza delivery guy or the Mormon missionaries didn't come through because they would have tried to blame the drugs that they found in the old vehicle on those folks as well. And so I'm asking, you know, you have to be more than a visitor or an invitee to a residence to be able to support the claim that you're going to find a drug dealer. You have to be more than a visitor or an invitee to a residence to be able to support  In other words, do they need the actual drugs in their hands? I think you need something more. You don't have to have the drugs in their hands. You can have constructive possession, clearly. But if you're going to go with constructive possession, you have to have more. You have to have something that connects him up to that storage shed and the vehicle. He was there. He was there. But so was the Avon lady. So were the Mormon missionaries that I gave as an example. Counsel, isn't the question whether a rational jury, isn't the question under Jackson, whether a rational jury could connect him up beyond a reasonable doubt? Whether we think there's a connection. I agree with you in your analysis, Judge Gould. However, in this case, I would submit that everything that the law enforcement testified to was part of their preconception that this person was a bad person. He had no prior felonies, either in Mexico or in the United States. He was legally in the U.S. And when everything they saw, they overinterpreted and they read as complicity in a drug transaction. It's kind of like in the old days when they looked for witches or they looked for communists. Everything became a characteristic. If your favorite color was red, you had to be a communist. I mean, you kind of are at that point. And although the jury may have found that my client was guilty, I would submit that your role as judges here is to carefully review. And if you find that no rational prior fact could come to that conclusion beyond a reasonable doubt, whether it's because of passion or emotion or whatever, that it would be your obligation to remand. Thank you, Counsel. Your time is well over. We'll still give you a minute for rebuttal. Thank you so much. May it please the Court. My name is Chris Alanum. I'm an assistant United States attorney, and I'm representing the government in this matter. There was sufficient evidence to convict the defendant of each of the drug trafficking crimes for which he was convicted when viewed under the correct standard. And that is the standard set forth in United States v. Neville, looking with the inferences drawn in the government's favor and looking at the evidence in the light of the verdict that a rational juror could have found the essential elements of each crime beyond a reasonable doubt. I will focus on the possession with intent to distribute convictions. Given the Court's questioning – given the Court's earlier questioning, the conspiracy evidence was properly taken into account as part of the possession with intent to distribute convictions here because it goes to the element of knowing possession. Given that the defendant's – Not the possession, right? It goes to the element of knowing. And the circumstantial evidence was strongly in favor of the possession in this case. What was it exactly? He goes to Fresno, and somebody is seen taking a bag from the place where he is. That's correct. Shortly after he arrived. And then the next day, there's actually a rather small amount, as I recall, of methamphetamine in that place. It was more than a pound of methamphetamine, Your Honor. Right. In the location. I don't know. How big is a pound of methamphetamine? I don't know.  How big is a pound of methamphetamine? Approximately this large. I mean, we don't know what was in this white bag, right? We don't know. And a relatively small amount of money. And besides which, if he was – you would think that if he was selling, he would have the money. The money wouldn't be there. A few things on that, Your Honor. First of all, the wiretap calls did go. And there were wiretap calls that went to the fact that the money was exchanged separately. So, for example, the wiretap call that the government cited in which the defendant said, well, you can pay him, gave his permission, essentially, to pay somebody else. In terms of the possession, there was also other evidence connecting the defendant to the individual at that location in whose possession the marijuana was found – sorry, the methamphetamine was found at that point. So there were the toll records between the defendant and Cesar Baez, the individual in whose room the methamphetamine was found, previously in April of that year, and then again through a common Mexican cell phone number on the morning of the defendant's delivery to Cesar Baez at the Fresno farmhouse. Does your conviction ultimately depend on that methamphetamine being the methamphetamine that he brought there? The conviction on count two, which is the Fresno location, does depend on him having been the person to take the methamphetamine to the Fresno farmhouse. That methamphetamine. Correct. And also in the Moreno Valley, is that what it was? The Moreno Valley also does depend on him having been the person to take that methamphetamine to the methamphetamine that was found at the Moreno Valley stash house to Moreno Valley. Can you point us to another case that found this kind of evidence sufficient, i.e., he was there and the next day there was some drugs there? Well, first of all, on the Moreno Valley stash house, it was approximately an hour or an hour and a half after he went there that they conducted the consent search of the house. So it wasn't a matter of a day. It was a matter of approximately an hour and a half after his departure. The consent search occurred. They found the methamphetamine in the house. And they didn't find anything else in the house indicating that anyone else lived there. It was purely a stash house. They found the methamphetamine in the stash house. And this was about an hour after the defendant. In that case, did they see somebody carrying something? I don't remember. No. The defendant pulled into the garage for the Moreno Valley one. The garage door closed for 22 minutes. And then it was in that same garage after the garage door went up and a consent search was conducted that they found the methamphetamine in the Moreno Valley stash house. I don't know. It wasn't there to begin with. They can't be sure. However, drawing the inferences in the light most favorable to the verdict, the evidence is sufficient. The government does not have to present evidence of the defendant. So do you have any case like this? Duenas would be the closest case in which the defendant was not caught with methamphetamine actually holding it in her hands. She was sleeping in a bedroom with methamphetamine in which another defendant in the same case was sleeping in that same bedroom. And she argued that she hadn't possessed it. But she was in physical proximity to the methamphetamine. Here he was not seen in physical proximity to any methamphetamine. He was not seen in it, but he was in physical proximity to it. Because he drove into that same garage where the methamphetamine ultimately was discovered an hour and a half after he left the garage. And there is no case law from this circuit requiring that the defendant actually be caught with methamphetamine or any other drug in his hands. That's the nature of constructive possession. The government's evidence here was very clear that the defendant drove into the garage, passed the car of the other individual who was at the house at the time, and that the methamphetamine was found in that garage approximately an hour and a half later. And in addition, going to the knowing element, that the defendant had made all of these previous trips and that the defendant had wiretap calls in which he was discussing methamphetamine in barely coded language. Similarly, with the Fresno farmhouse, in addition, on the Moreno Valley trip, he had been in contact with the individual who was at that house, the only other individual who was at that house prior to his trip there. It was the same individual whom the call related to the walking into a wolf's trap in Sunland, California, had occurred when a law enforcement officer out on surveillance actually saw him transfer possession of what was never ultimately seized, but which appeared to be transferring possession of something from the engine compartment of his vehicle. And all of that could be taken into account in both of the possession with intent to distribute counts. Moving on to the district court's findings with respect to obstruction and the leadership role. Jimenez-Ortega is certainly relevant, but Jimenez-Ortega doesn't change the outcome in the case, and that is that the district court did not commit fair error. The district court's materiality finding was certainly not explicit. She did not use the word material. She did not make a factual finding that it was material, as the case requires. She made a factual finding related to materiality. She did not say that it was a materiality finding. She did not use the word material, Your Honor. She found that he lied with respect to, quote, the activities that he testified about and the offer of innocent and not credible explanations for those activities, end quote. And as it goes to the offer of innocent and not credible explanations, the district court there was referring to materiality. Her finding was a finding that supports materiality along the lines of the question that Judge Gould asked. Given that this is on plain error, the defendant did not raise this. Certainly, first of all, the adequacy of the district court's factual findings hasn't been raised on appeal. Second, if the court is inclined to consider it, the district court's factual finding there was not plain error because there is not case law suggesting that the district court has to use the word materiality. The district court has to make a factual finding that is – that supports materiality. And under Dunnegan, the Supreme Court case, the district court can make a finding without going through each of the elements individually, but can make a factual finding that supports – This is not a question where you have to make or not make each of the findings. This is a case where our court has said specifically you have to find materiality. And I would argue, Your Honor, that the court did find materiality in stating that – Do you have any case that supports that theory, that when we say you have to find materiality, you can just talk about other problems, and that we can then determine that that means you found materiality? No, Your Honor. What I do have is the fact that this is under plain error, and there isn't – That you said. I didn't ask you whether it was under plain error. I asked you whether you have any case that says, after we say very clearly, very explicitly, it's the district court that has to find materiality, we can't examine the record and determine whether there is materiality, whether that's what he meant, but he has to make that finding, not us. Do you have any case that says, well, he doesn't really have to say materiality, he can say something that we can look at and determine whether he really meant materiality? I do not have a case that says that the district court has to say the word materiality. That's not what I asked you, is it? Did I ask you whether you had a case that says the district court has to say materiality? Was that my question? No. And I am not – Then why don't you answer the question? No, Your Honor. I don't have a case along the lines that you had mentioned. All right. Thank you. In addition, the government would argue that the error, if there was an error, was harmless in this case. The obstruction enhancement, because of the nature of the guidelines calculation here, increased the defendant's guideline range by only one point. He was – Then you mean you don't have any interest in whether we uphold that because it's irrelevant, it doesn't matter? I – when the Court is referring to that, I'm not sure. The extra points, the enhancement. He said it doesn't – there's only one point that doesn't affect anything. It is – it's certainly true that if the obstruction enhancement were not applied, if this Court did not uphold the application of the instruction of the obstruction enhancement here, that the sentence – that the error was harmless if the Court didn't uphold that obstruction enhancement, because the guidelines range would have only been one range different, given the Court's substantial downward variance. So then you have no – you then have no objection to striking it if it's harmless? Your Honor, we – we are interested and would have an objection to striking it because it appears that the district court did follow the law in applying the obstruction enhancement here. However, in the alternative, we are arguing that it was harmless. All right. Thank you, Your Honor. I believe Judge Reinhart has done my job for me, so I won't take up very much time. We ask that you remand with instructions to the district court on the topic of the obstruction enhancement. We feel that in this particular case, in addition, even if you decide not to go in that direction, that there was insufficient evidence for a reasonable trier of fact to conclude that my client was complicit in a drug conspiracy or drug transactions. He just was at the wrong place at the wrong time. And he took drives all over the Southwest. And everybody points at this and goes, well, where was he going? Why did he go there? Well, you know, I grew up in the 50s, and I remember very clearly taking rides with my family that went no particular destination. And it was a very commonplace thing at that time to take rides with your family in a car and then to return. And you didn't always go to Grandma's or Aunt Kathy's. And I think so also in this case, this is how this family chose to spend family time, would be they would just take drives on the weekends and so forth and without particular destinations. And that's not illegal, and it's not an indicia of illegal misconduct. Thank you very much for your time. Thank you, counsel. The case is derogated and will be submitted.
judges: REINHARDT, GOULD, BERZON